The next case is 414-0465-WC, Roy Burrus v. Workers' Compensation Comm'n, Dan Rutherford v. Boone & Dyer, Coal Mining Company. Counsel, you may proceed. May it please the Court, Mr. Wirtz, my name is Bruce Bresore and I represent Roy Burrus. And it's been a long day already, hasn't it? I think this will be shorter than the other. This is a manifest weight argument and my bar is high. But this is one of the few cases I think passes the test. With the permission of the Court, on the argument on the request for special findings, I'll rest on the brief. The first disease we have to look at is co-workers' pneumoconiosis and petitioner also won't ask for a reversal based on that disease. I think the Commission was wrong. But even this wrong decision has to be more flawed for me to win and ask for you to reverse on manifest weight. That takes the rest of the appeal to the diseases of chronic bronchitis, sinusitis, and rhinitis. And the reason for the appeal is that the Commission lacked a basis for its findings. Dr. Rosenberg had no rational basis for his opinion and the reasoning is this. First, Dr. Cohen diagnosed chronic bronchitis based on the face-to-face patient history taken by a very well-qualified pulmonologist to determine the specific question of whether the petitioner had chronic bronchitis or not. Second, Dr. Rosenberg did not have an exam. He never met the petitioner. He didn't take a physical exam. He didn't take a patient history. He relied solely on the medical records he was given by a respondent and Dr. Cohen's report. And his reasoning was that on chronic bronchitis he didn't find enough productive cough in the records to satisfy him that the petitioner had it. Third, the Commission had the testimony of Dr. McFarland, the man that wrote those records that Dr. Rosenberg relied on. Now, Dr. McFarland answered the questions about his records. He's the best one to say what his records mean. He said he didn't make a diagnosis of chronic bronchitis in his records, but that he didn't believe the petitioner came to see him every time he had a cough, and that if a qualified pulmonologist gave a complete black lung exam to find out if there was enough history of cough to find a diagnosis of chronic bronchitis, based on his treatment records of the petitioner over the years, he would not disagree with that pulmonologist. So who's Dr. Wyatt? Is it Wyatt? W-I-O-T? Who's that? He read x-rays for a respondent. And he's effectively removed, I think, from the evidence because we're not contesting the pneumoconiosis. So you're at this point withdrawing your appeal on the pneumoconiosis? Yes. As I went through this and how much I want to win everything, and I thought, I can't ask you to do that. And while we're at the point of clarification, in regards to the experts, the four B readers here, are you indicating that Rosenberg's and Wyatt's opinions were invalid? In other words, that they could not be relied upon by the commission due to either the experts not being properly credentialed or that their opinions were improperly based? Or is it simply the weight that the commission afforded those opinions? I think the commission looked at it. They gave weight where they wanted. I disagree with it, but I think they have the right to do that. And as I looked at this coming ready to speak to you today, I thought, well, I can't ask you to do that. I'm going to ask you another time when I get a stronger case. But the other three diseases aren't affected by my dropping the pneumoconiosis. Now, so... And I'm sorry to keep it, but you're claiming bronchitis and... Chronic bronchitis, rhinitis, and sinusitis. Now, and remember, and here's the key to the thing, Rosenberg, all he had was medical records. Rosenberg's entire review of these medical records boiled down to only six entries that he put in his report concerning petitioner's breathing. One said he wasn't having chest pain or shortness of breath. One referred to a chest X-ray that showed clear lungs, some coughing, and three prescriptions for coughing. And four others noted clear lungs on physical exam. Now, for some reason, he also reported colon surgery in 2006, a GI exam by a Dr. Karas in 2006, and an episode of pharyngitis in 2000. But he left out 12 more entries of cough, 10 entries of sinusitis or sinus problems, three entries of bronchitis, 14 entries of rhinitis, two entries of shortness of breath, six entries of post-nasal drainage, an entry of sneezing fits while he was working as a coal miner, something petitioner and his co-worker testified about at arbitration, and 23 entries of medication, eight for Meddral, three for Singulaire, one for Zyrtec, three for Flonase, one for Nasalide, three for Nasacort, three for Allegra, and one for something I can't pronounce. And he didn't say why he left all of those entries out. Let me see if I can catch you. As you know, as an experienced practitioner, you're stuck with the body of law that the commission is the sole judge of the credibility and weight to be given to the testimony. So are you saying that Rosenberg's testimony or his foundation is so flawed that it undermines the opinion? What are you saying? That's right. I'm saying that these records contain all of the things I just said, and when Rosenberg gave his report for them to review, it had six entries, four clear lungs, one of an X-ray, and the commission was deprived of evidence it should have had, didn't have. Now, he didn't say, Rosenberg didn't say why he left out those entries. Not why they were not important for chronic bronchitis, sinusitis, or rhinitis, or why colon surgery or a GI exam were important. He also didn't say how entries of clear lungs could conflict with pneumoconiosis, which is not on the table, chronic cough, or the upper airways diseases of rhinitis and sinusitis. Now, let's go back a minute to the value of the treatment records, and this gets down to it, and it comes up a lot here where I get the exam, my guy sees him, he touches him, he asks all the questions he needs to ask, and the respondent goes to Cleveland and gets a records review. And an issue comes up on chronic bronchitis, which is only a matter of patient history. The guy never saw him. He never asked him anything. My guy did all of that, and he's one of the best pulmonologists there are. And so the question comes out, how can that be? How can that match up? And that's a little bit of what I want to go about right now. The entries in the records that were relevant to these diseases weren't based on objective testing. They came from patient histories or physical exams taken by Dr. McFarland. And Dr. Rosenberg didn't know what questions Dr. McFarland asked, what the patient actually said, whether McFarland tried to write down everything that was said, and if he did, whether he was accurate. He had the opinion. And Dr. Rosenberg had the opinion of Dr. Cohen. And he knew that Dr. Cohen asked the right questions, and he said that Dr. Cohen would be more qualified than a family doctor. When you're only doing a records review, and a CW case in a records review is different from a chronic bronchitis, sinusitis, or rhinitis case. No matter what the records say, if there's CWP in there, then that guy who just did a records review can fall back on the B reading. Well, I had a feeling. And that does even it up on CWP. But not on chronic bronchitis, rhinitis, and sinusitis, because there is no objective testing for that. In those cases, it comes down to just one thing. The subjective opinion of the doctors who saw the patient. That's all there is. There isn't any basis for a disagreement with Dr. McFarland. There's no cough-o-meter, or phlegm-o-meter, or nose-running-o-meter, or anything with which the doctor can say, oh, Dr. McFarland was wrong. Now, that could have been cured if he'd have seen the man. If he'd have seen Petitioner, he could have said, well, I took the history, and I took his history of cough, and there wasn't enough. He didn't have that. Now, so the question gets to this point. With all that on the table, is this enough to declare the decision of the commission to be against the manifest weight of the evidence? I think the answer is yes. And the reason is that on these decisions, there's no rational basis for Dr. Rosenberg's disagreement with Cohen and McFarland. The commission has a duty to look at the record, to see if they don't match up with Rosenberg's summary, and also to see if the most pertinent entries were missing from respondents' exhibit of Dr. McFarland's records. And when it does, there's only one conclusion. If the commission's decision based solely on a records review, that expert has to have had all the records, and considered all the records, and discussed all the records, or there's no sufficient basis for an opinion. It's either flawed, or it's only partial. He can't leave out 90% of the personal, of the pertinent records, and still be credible. Now, the commission was told of these omissions from Dr. Rosenberg's report. They knew. As to sinusitis and rhinitis, now we're dropping down, leaving the chronic bronchitis out, and dropping down to sinusitis and rhinitis, the same logic applies. Dr. McFarland diagnosed them, and tied them to coal mining. Dr. Cohen said the mining can cause an aggravation. And even Dr. Rosenberg reluctantly admitted that coal mining can aggravate it. There's no basis for the commission's denial on these diseases, and I think there's one more point that puts the final nail in the coffin. And it has to do with sinusitis. In Dr. Rosenberg's defo, the word sinusitis only shows up one time. In Respondent's expert's deposition, the word sinusitis only shows up one time, and that's on page 12 when he says, Dr. Cohen noted it. In Dr. Cohen's deposition, the word sinusitis does not appear in any cross-examination section. Regardless of the other diseases, Respondent has waived any defense for the disease of sinusitis. There is nothing contrary. I don't ask the court to reverse on the disease of pneumoconiosis. I do respectfully request the court to reverse on one or all three diseases of chronic bronchitis, sinusitis, and rhinitis. And my burden is a preponderance of the evidence, and when the Respondent has provided no evidence whatsoever to counter sinusitis, it seems I should win at least on that one disease. Thank you. Thank you, counsel. Counsel, you may respond. May it please the court, Mr. Wasore, I'm obviously not going to argue disease like lung here, but if you have a question about the special findings, I'd be happy to answer it. Otherwise, I'll move on. The only thing I would point about that is there wasn't a prejudice shown in regard to not answering those questions. Beyond what was stated in the brief that the appellant was prejudiced given the outcome, which I guess means my claim was denied, so obviously I was prejudiced, but beyond that, there isn't a prejudice. I'm going to be very brief. There's not a lot to talk about here. My expert, Dr. Rosenberg, reviewed all the medical records in this case, and it's true. He didn't examine the gentleman, but he relied upon not only those treatment records, but also the records of the retained expert, Dr. Cohen, who, and I don't know if I did it in this case, but I usually always do when I take his death and ask him whether the history he took was complete, whether he recorded it completely in his report, whether it was accurate, et cetera, and assuming Dr. Cohen is very good at taking a history and doing all that, my doctor saw it. So yes, my doctor could have met with him and asked him all those same things, but he relied upon what was told to the retained expert, as well as his physical findings, et cetera, from exam, and all the medical records, and Dr. Rosenberg was the only one to actually review all the medical records. Now, Dr. Rosenberg, no expert is going to, and I don't want him to because we don't want him, but no expert is going to go through and list everything in the medical records. My lord, that report would be just huge, depending on the amount of medical that's reviewed. So it's not unusual for an expert not to say something about everything in the medical records, but he did have everything to review, and most importantly, what he reviewed was the treatment records of Dr. McFarland, and in this case, we also took Dr. McFarland's deposition. He relied upon those treatment records in saying that this gentleman did not suffer any pulmonary disease from his exposure at work, including chronic obstructive pulmonary disease, and that's borne out because we took Dr. McFarland's deposition in, this gentleman's treating physician for many years prior to his leaving the mine and afterwards, and he testified, I could not make a diagnosis of chronic bronchitis because this gentleman did not give me a sufficient history of cough and sputum to do it, and Dr. Rosenberg, in his testimony, said, I relied upon those records in coming to the same conclusion. He doesn't have it. There's a technical definition for chronic bronchitis, and I cannot remember if we have it in this case, but basically, and it's adopted, I think, by internists and pulmonologists, and it's basically you have to have cough on an everyday basis for two months out of the year, for two consecutive years, or something along that line. So there is a definition that has to be met. Now, Dr. McFarland has seen this gentleman throughout, and he says he doesn't have the requirements to make that diagnosis. Now, I'll concede that Dr. McFarland doesn't know what this gentleman's going through when he's not there. Neither do I. None of us do. But he takes a history from him each time of the problems he has, and all we have is that history. And medical records, treatment records, are inherently reliable because we assume the individual is going to be trustworthy when he's relating that history because he wants to get appropriate care for his problem. In regard to sinusitis, I can't believe I'm arguing the case before the court on sinusitis, but in regard to sinusitis, Mr. Wessor said that Dr. Rosenberg only mentioned it one time. In this gentleman's treatment records, sinusitis was only mentioned one time in the treatment records of Dr. McFarland when this man was employed in the mine one time. So I guess Dr. Rosenberg and Dr. McFarland are tied in that regard. He later, and he doesn't really use the term sinusitis, but he later in February of 2009, this gentleman left work in August of 2007, comes in to him with a problem that I'll concede, just for the sake of argument, you could maybe call sinusitis, but that's years after he left the mine. And most importantly, I asked Dr. McFarland, are you able to say that this gentleman suffered any permanent functional impairment, and he said he could not say that. That's the treating physician. There is ample evidence in this record that supports those factual findings of the commission, and it is their obligation to make those factual findings, and they did so. I don't really have anything more unless you have a question. No, I don't believe there is. Thank you. Thank you, Counsel. Counsel, you may reply. Counsel says that Rosenberg didn't examine, that he relied on Dr. Cohen. He asked Dr. Cohen if his history was complete and if it was recorded accurately, and he said it was. Why didn't Rosenberg believe it? How can he stand up here and say, Cohen took a good report, he did it accurately, and Rosenberg saw it? Well, Rosenberg rejected it. So, I mean, I don't get that argument. And he says no expert is going to go through every entry. Well, if he did an exam, I could believe that. That's why a Section 12 exam is there. That's why you get to take one. But if you have chosen to not have an exam and to only have a records review, I think you're obligated to have a real records review, not a partial one. And if it's going to be a partial one, tell us what the parts are. None of that's in there. Now, Dr. McFarland looked at his records. He's a regular treating doctor in a country town of Hillsboro. He's got how many people sitting, waiting outside, coughing, kicking around, whatever their problem is, and he needs to get people in and he needs to get them out. And in a town like that, with a lot of coal miners, coal miners expect to have breathing problems, and a lot of them don't come in for them. I'm getting older. I'm breathing the coal. I smoke. I'm getting fat. Whatever it is, they don't come in for them. What Dr. McFarland said is he didn't come in here enough for me to meet those requirements that he had more than most days of the week, three months of the year, two years in a row. He didn't have that. But he also said, but he didn't come in here every time he coughed. In other words, he knows this guy. He said he didn't come in here every time he coughed, and he went further, if another pulmonologist examines this guy, asks the right questions, and says he's got chronic bronchitis, I'm not going to disagree with him. And he also says if another pulmonologist examines him, there's nothing in my record that's going to allow him to rule it out because he didn't come in every time. So when you have the author of those records, and then you have a hired guy who's making an opinion based solely on those records, it gets kind of weak, in my opinion. Now, what was said just before I came up here is that sinusitis was only listed one time in the records while the man was in the mine. Later, it happened more. Well, first of all, sinusitis is a disease. You have this mucosal line that goes all the way from your nose down through your bronchial tubes. It's the same thing. Sinusitis is when it gets inflamed, it gets too big. It's a thing called a reed index. They can measure it on autopsy. The lining gets too thick. That's why you have the hypersecretion of mucus. It is a real disease. You can have lung cancer and not be able to measure it. You can have prostate cancer and not be able to measure it at certain times. And you can have sinusitis that you may not measure objectively sometimes. But it doesn't mean it's not real. It doesn't mean that if you get an infection in there and get a brain abscess, it doesn't mean it can't even kill you in certain circumstances. It's not good. It's compensable. Pneumoconiosis, rhinitis, chronic bronchitis, sinusitis are compensable. Are they world breakers? No. The reason they're compensable is because a guy shouldn't go back to the same place that aggravated him or made him in the first place. And there's an award for that. And the commission has great flexibility. They can give 5%, 10%, 15% awards. But if he's got the disease and it's not even contested by the respondent, he should get something, not a denial. And the terrible thing about a denial in these cases is it not only means he doesn't get something for this, but a worsening condition claim is ruled out. And if somehow when this guy dies his lungs or these three diseases have something to do with that death and the coal company would stipulate as a fact, I can't file a claim because there was a denial earlier on. It's a harsh remedy. And when respondent waives the argument, an award should be given. Thank you. Thank you, counsel, for your arguments in this matter. It will be taken under advisement. This position shall issue. Court will stand in brief recess.